CULPEPPER, Judge
(dissenting).
I agree with the majority that the defendant’s insured, Mr. Micelle, was negligent in making a left turn at a time when the approaching motorcycle was so close that it was unsafe. Mr. Micelle simply didn’t see the motorcycle, but it was in plain view and he should have seen it.
However, I think the evidence also shows clearly that young Boyle was guilty of contributory negligence, barring his recovery. Boyle gave conflicting versions of the accident. He first testified that he was traveling south, in the outside lane of traffic, at a speed of about 30 miles per hour and that he saw the approaching Micelle automobile slow down, but he denies that it stopped; that he then saw the Micelle vehicle begin its left turn but the turn was made so quickly that Boyle was only 15 feet away by the time he realized a collision was unavoidable; that he did not have time to apply his brakes or take evasive action.
This version of the accident cannot be reconciled with the physical facts. It must be remembered that when Micelle turned left he crossed not one but two lanes of traffic, a total distance of 30 feet, and then drove all but about 4 feet of his automobile up on the apron in front of Wilson Motor Company before the motorcycle struck the extreme right rear of the automobile. If, approaching at a speed of 30 miles per hour, young Boyle was observing the Mi-celle vehicle the entire time it turned left and traversed this distance, it is inconceivable that Boyle did not realize the danger in time to apply his brakes and stop or at least to change his course to the left the few feet necessary to avoid the .accident.
Apparently realizing the weakness of this version of his actions, young Boyle later contradicted himself by testifying that he “may have been looking off to see if there were any cars that might pull off 17th Street.” As stated in the majority opinion, 17th Street intersects Ryan Street on the east about 30 feet north of the point of impact. Young Boyle did not make it clear whether he meant that he looked off to his left after he saw the Micelle automobile start its left turn, or whether he meant that he did not see the automobile at the time it turned left. However, in either event, Boyle’s lookout was deficient. As regards the duty to observe the road ahead, the court stated in Jackson v. Cook, 189 La. *474 860, 181 So. 195 “* * * the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; ” “that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.” I have been unable to find any case which excuses a motorist’s deficient lookout ahead, on the grounds that he momentarily looked aside.
It is my conclusion that these contradictory versions of the accident given by young Boyle are absolutely irreconcilable with the physical facts. If he saw the Micelle automobile turning left in his path, he had plenty of time to avoid the accident. If he did not see the Micelle automobile, he is guilty of negligence in failing to keep a proper lookout ahead.
The defendant has shown by an overwhelming preponderance of the evidence that actually young Boyle was looking off to his left and simply did not see the Micelle vehicle. The defendant introduced the testimony of two eyewitnesses, both of whom were in the display room of Wilson Motor Company, only 40 feet from the point of impact. These two witnesses testified positively that they saw Micelle stop in the inside northbound lane of traffic, to let. some oncoming traffic go by; that then Micelle started a left turn and just as the automobile was almost completely up on the apron in front of Wilson Motor Company, they saw the motorcycle coming “at a rather fast pace” near the west edge of Ryan Street. These two witnesses testified further that the boy on the motorcycle was looking to his left; that he apparently did not see the Micelle automobile; that without slackening speed, applying his brakes, or attempting to turn, he drove his motorcycle headlong into the rear end of the automobile.
This testimony is corroborated by the physical facts found by the investigating police officer. From debris and other physical evidence found at the scene, the investigating officer placed the point of impact at 3½ to 4 feet from the west side of Ryan Street. The officer found no- skid-marks or other evidence to show that the motorcycle had applied its brakes or taken any evasive action.
The applicable law is stated in 38 Am.Jur. 865, Verbo Negligence, Sec. 189: “Every person is bound to the exercise of vigilance with a view to the discovery of perils by which he may be menaced and their avoidance after they have been ascertained. Every person is bound to use due diligence to save his person from injury by the negligent act of another. The acts required to' be done with a view to the preservation of safety will depend, necessarily, upon the circumstances of the case, as weighed by the rule of ordinary and reasonable care- and the standard of the ordinary prudent person * * * ” As a general rule, one-must exercise the same degree of care for his own safety as is required by another who is under a duty to protect him against injury. While due care for one’s own-safety does not require the exercise of the-highest possible degree of care or the-anticipation of events which, while possible, are only slightly probable, the test is-what a reasonably prudent person would' have done under the circumstances. See 38 Am.Jur. 866, Verbo Negligence, Sec. 190.
The case of Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4 is very similar. There, a truck driver, turning left off a city street, failed to notice a bicyclist on the sidewalk. In denying recovery the court held the bicycle rider should have observed the danger in time to avoid the accident.
A further factor which I have considered is that the jury verdict in this case was-obviously what is often referred to as a “compromise verdict”. The award of $2,-300, for young Boyle’s very serious, painful’ and permanently disabling injuries to his-leg, was manifestly inadequate. A compromise verdict should be given very little weight by the appellate court.
*475 For the reasons assigned, I respectfully ■dissent.